Filed 6/7/22  In re S.S. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | B314691 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Tracy J.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 19CCJP07259A |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

Mother Tracy J. appeals from the juvenile court's order terminating her parental rights to her daughter S.S. (born November 2019). Mother contends the order must be reversed because the Los Angeles County Department of Children and Family Services (Department) failed to comply with its duty of initial inquiry under state law (Welf. & Inst. Code, § 224 et seq.) implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) when it did not ask certain extended family members if the child had Indian heritage.[1] We conclude substantial evidence supports the juvenile court's finding that ICWA does not apply and affirm.

## BACKGROUND

**1.** ***Proceedings leading to termination of parental rights***

In November 2019, shortly after her birth, the Department detained S.S. due to immediate concerns about mother's mental health stability, and her unresolved substance abuse issues. In an earlier dependency case in San Bernardino County, mother also had failed to reunify with S.S.'s older full- or half-sibling J.S., who had been removed from her care for similar reasons. Tina W., mother's former foster mother and apparently mother's aunt (maternal great aunt),[2] was granted legal guardianship of J.S.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code. Because ICWA uses the term "Indian," we do the same for consistency, although we recognize other terms are preferred. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2]    Mother referred to Tina W. as her children's maternal grandmother. As we discuss, the Department and its

2

During its initial investigation, a Department social worker interviewed Tina W. and maternal aunt Tashae W., who lived in Texas. Both had concerns about mother's mental health. Maternal grandmother, mother's biological mother, was diagnosed with paranoid schizophrenia—she was unable to care for her children. As a result, mother was "in the system" at a young age.

On November 12, 2019, the Department filed an initial dependency petition on behalf of S.S. followed by a first amended petition on December 18, 2019, after mother named Peter S. as S.S.'s father. As to mother's conduct, the first amended petition alleges her history of illicit drug abuse, current methamphetamine use, and her mental and emotional problems —including delusional behavior and a diagnosis of bipolar disorder—rendered her incapable of providing regular care for and endangered S.S. The petition also alleges mother and Peter S.'s failure to reunify with S.S.'s sibling, J.S., placed S.S. at risk of harm.[3] On November 13, 2019, the court removed S.S.—who remained in foster care—from parents and ordered monitored visitation.

San Bernardino counterpart referred to her as the maternal great aunt.

[3] The juvenile court found Peter S. was the alleged father. In conversations with social workers, mother referred to Peter S. as S.S.'s father, her own father, and her grandfather. Mother generally was incoherent during those discussions. Peter S. denied paternity and did not participate in the dependency proceedings. He is not a party to this appeal.

The Department's December 16, 2019 jurisdiction/ disposition report described the dependency case involving J.S. and attached a copy of the September 2013 jurisdiction/ disposition report and April 2015 section 366.26 report from that case. Peter S. is named as J.S.'s alleged father. The San Bernardino County Children and Family Services agency (SBCFS) refers to Tina W. as the maternal great aunt in its section 366.26 report, as does the Department in its reports.

In December 2019, a dependency investigator interviewed mother in person about the petition's allegations. Mother was incoherent and "displayed disorganized thoughts," including delusions about being related to royalty and celebrities. The investigator also spoke by telephone with Tina W., Tashae W., and Latia T.

Tashae W. wanted to care for S.S. She traveled to California from Texas for visits with her niece.

On January 29, 2020, the juvenile court sustained the first amended petition, amended by interlineation, under section 300, subdivisions (b) and (j), as to mother and Peter S. and declared S.S. a dependent of the court. The court removed S.S. from both parents. The court also denied mother reunification services based on her failure to make reasonable efforts to resolve the issues that led to J.S.'s removal and the termination of her reunification services in his case. The court ordered the Department to initiate an ICPC[4] request with

---

[4]     ICPC stands for the Interstate Compact on the Placement of Children.

the State of Texas to assess Tashae W. for S.S.'s placement. In December 2020, S.S. was placed with Tashae W. in Texas.[5]

On July 12, 2021, the court convened a section 366.26 hearing. Mother appeared by telephone. The court found S.S. was adoptable and no exception to adoption applied, and terminated parental rights. The court ordered the Department to initiate an adoptive home study for Tashae W. in Texas.

## 2. *Facts relating to ICWA*

On November 7, 2019, a Department social worker signed an Indian Child Inquiry Attachment form, checking the box, "The child has no known Indian ancestry."[6] The Department's November 12, 2019 detention report also states ICWA does not apply.

On November 13, 2019, the day of the detention hearing, mother signed under penalty of perjury and filed a Parental Notification of Indian Status form (ICWA-020) and checked the box, "I have no Indian ancestry as far as I know." The juvenile court acknowledged mother—who was present at the hearing—had filled out the ICWA-020 form, indicating she had no Indian ancestry to her knowledge. Mother's sister, maternal aunt Latia T., also attended the hearing. The court asked her if she knew of "any American Indian blood or ancestry," including United States or Canadian tribes. After she responded, "No,"

---

[5] S.S.'s foster caregiver also had wanted to adopt her.

[6] The social worker, however, did not indicate whether she had made an Indian child inquiry—neither the box "made" nor "not made" following "Indian child inquiry" is checked.

the court found it had no reason to know or to believe S.S. is an Indian child, and ICWA does not apply.

The court's November 13, 2019 minute order states, "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status. ICWA-020 . . . is signed and filed."

The Department's December 2019 jurisdiction/disposition report states that, on November 13, 2019, the court found no reason to know S.S. is an Indian child, as defined under ICWA. The attached 2013 jurisdiction report relating to S.S.'s sibling or half-sibling J.S. states ICWA "does or may apply" and lists "Creole" as the possible tribe. The 2015 section 366.26 report for J.S. states ICWA "does not apply."

The Department repeated the juvenile court's November 13, 2019 finding that it had no reason to know S.S. is an Indian child in a supplemental jurisdiction/disposition report and in its March 2020 section 366.26 report. The juvenile court did not revisit ICWA after making its November 13, 2019 finding. At the July 2021 section 366.26 hearing, the juvenile court clarified it would be "considering the entire contents of the court file."

## DISCUSSION

Mother contends the order terminating her parental rights must be conditionally reversed because the Department did not question her relatives, with whom it had contact, about S.S.'s possible Indian ancestry as required under section 224.2, subdivision (b). The Department, in turn, contends mother failed to show any purported inquiry error was prejudicial, as further

6

inquiry of additional relatives would not have "borne any meaningful information as to S.S.'s Indian ancestry."

**1.      *Applicable law and standard of review***

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8; see 25 U.S.C. § 1902.) Both ICWA and state law define an " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition].)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry." (*Benjamin M., supra*, 70 Cal.App.5th at p. 741.) Federal regulations implementing ICWA require *courts* to ask participants in a dependency case whether they know or have reason to know the child is an Indian child and to instruct the parties to inform the court " 'if they subsequently receive information that provides reason to know the child is an Indian child.' " (*Ibid.*)

California law, however, "more broadly imposes" on the Department and the juvenile court, "(but not parents), an 'affirmative and continuing duty to inquire' whether a child

7

in the dependency proceeding 'is, or may be, an Indian child.' " (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741–742, quoting § 224.2, subd. (a).) That duty to inquire "begins with the initial contact . . . and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.* (2020) 58 Cal.App.5th 275, 290, citing § 224.2, subds. (a)–(c).)

Under the statute, when the Department takes a child into its temporary custody, its duty of initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b); *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742; see also *In re Darian R.* (2022) 75 Cal.App.5th 502, 507.)[7] The juvenile court, in turn, at a party's first appearance, must ask "each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and require each party to complete an ICWA-020 form (Cal. Rules of Court, rule 5.481(a)(2)(C)). "The parties are instructed to inform the court 'if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2020); § 224.2, subd. (c).)" (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

---

[7] Extended family members include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [adopting federal definition].)

If that initial inquiry gives the juvenile court or Department a "reason to believe that an Indian child is involved," then their duty to "make further inquiry regarding the possible Indian status of the child" is triggered. (§ 224.2, subd. (e); *Benjamin M., supra,* 70 Cal.App.5th at p. 742.) And, once there is a "reason to know" an Indian child is involved, formal notice under ICWA must be given to the child's "parents or legal guardian, Indian custodian, if any, and the child's tribe." (§ 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1); 25 U.S.C. § 1912(a).)[8]

"  ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 (*Josiah T.*).)

**2.    *Substantial evidence supports the court's finding***

Mother challenges the sufficiency of the Department's initial inquiry under section 224.2, subdivision (b) as to maternal extended family members only. She concedes ICWA did not apply to Peter S., who was only the alleged father and denied paternity, and the Department thus was not obligated to question him or his relatives about S.S.'s Indian status. (See 25 U.S.C. § 1903(9) [under ICWA " 'parent' . . . does not include the unwed

---

[8]    Neither the duty of further inquiry nor formal ICWA notice requirements are at issue.

father where paternity has not been acknowledged or established"]; *In re Daniel M.* (2003) 110 Cal.App.4th 703, 708–709 [alleged father who had not established he was a parent under ICWA had no standing to challenge alleged ICWA notice violations]; *In re D.A.* (2012) 204 Cal.App.4th 811, 826–827 [name on birth certificate alone does not establish voluntary declaration of paternity].)

Rather—citing *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 (*Y.W.*), *Benjamin M., supra*, 70 Cal.App.5th at p. 744, and *Josiah T., supra*, 71 Cal.App.5th at p. 403—mother argues that, at a minimum, to fulfill its duty of initial inquiry, the Department was required to ask maternal aunt/prospective adoptive parent Tashae W. and maternal great aunt Tina W. about S.S.'s Indian status. Mother argues this is especially true given her significant mental health issues.

As mother notes, the Department interviewed both Tashae W. and Tina W., but nothing in the record indicates a social worker questioned either of them about possible Indian ancestry. The Department's discharge of its initial duty of inquiry may have been imperfect in this regard, but we cannot say, on this record, that it was so inadequate as to invalidate the juvenile court's finding ICWA did not apply. Rather, the evidence uncovered by the Department during its initial inquiry was sufficient to support the juvenile court's finding that it had no reason to know S.S. is an Indian child.

First, mother denied Indian ancestry in her signed ICWA-020 form, and the juvenile court acknowledged that denial on the record in mother's and her counsel's presence. And, although mother appears to have serious mental health issues, her sister Latia T.—an extended family member under ICWA—

10

confirmed on the record that the family had no "American Indian blood or ancestry" to her knowledge. True, there is no record that the Department itself asked Latia about S.S.'s Indian status, but there would be no reason for it to do so given her unequivocal denial to the court.

Second, the Department had information from its counterpart in San Bernardino—included in its own jurisdiction/disposition report to the court here—that ICWA did not apply to S.S.'s maternal half-sibling, or possibly full sibling, J.S. The court's order finding ICWA did not apply in that case is not part of the record, but the Department and the court here reasonably could infer the court in fact made that finding. SBCFS's jurisdiction/disposition report reveals that, at the beginning of J.S.'s case, there was some indication he might have a connection to the Creole tribe. SBCFS apparently investigated that connection as it recommended the court find: (1) J.S. "may come under the provisions of [ICWA]," and (2) "Noticing requirements under ICWA have been initiated." By the time it prepared its section 366.26 report—about 18 months later— SBCFS had concluded ICWA in fact did not apply to J.S. Finally, the juvenile court in J.S.'s case ultimately granted Tina W. legal guardianship of J.S.—as SBCFS had recommended in that same report.

J.S. and S.S. undisputedly share the same ancestry, at least through mother. As only mother's ancestry is at issue, if ICWA did not apply to J.S., it would not apply to S.S. Mother does not dispute that ICWA did not apply to J.S.,[9] and there is

_____

[9] Indeed, mother does not mention this earlier finding in her appellate briefing.

no evidence in the record that she, or anyone else, challenged Tina W.'s legal guardianship of J.S. under ICWA.

In the cases on which mother relies, in contrast, there was some uncertainty or unknown facet about the parent's ancestry that extended family members presumably could clear up. In *Y.W.*, the mother had been adopted as a toddler, but the social worker did not follow up on a lead to contact mother's biological parents. (*Y.W., supra*, 70 Cal.App.5th at pp. 552–553). In *Benjamin M.,* the father had never appeared in court, and thus had never been asked about his Indian status, but the social worker did not ask the father's extended family members about his possible Indian ancestry. (*Benjamin M., supra*, 70 Cal.App.5th at pp. 744–745.) Similarly, in *Josiah T.*, the Department did not know whether father (who did not participate) had any Indian ancestry, yet it did not ask available paternal relatives about Indian ancestry until 18 months to two years after filing its petition, and those relatives disclosed possible Cherokee and Choctaw heritage. (*Josiah T., supra*, 71 Cal.App.5th at pp. 393–394, 397–401, 403.)

Nevertheless, mother argues that, because the Department did not inquire of all available maternal extended relatives, we must conclude substantial evidence does not support the court's finding ICWA did not apply. In her reply, mother relies on a line of cases, in addition to those cited above, concluding the Department erred by failing to inquire of extended family members as required under section 224.2, subdivision (b), despite parents' denials of Indian ancestry. (E.g., *In re H.V.* (2022) 75 Cal.App.5th 433, 436, 438 [Department failed to discharge its "first-step inquiry duty," even though mother denied Indian ancestry, when it did not ask extended family members it had

contacted about child's possible Indian ancestry]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 [argument substantial evidence supported no-ICWA finding in form of parents' and paternal great grandmother's denials of Indian ancestry "ignores the express obligation that section 224.2, subdivision (b), imposes on the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry"].)

We do not agree that substantial evidence cannot support a finding ICWA does not apply in every instance where the Department has not asked every available extended family member about Indian ancestry. Here, SBCFS's earlier conclusion that ICWA did not apply to J.S., combined with both mother's *and* her sister's denials of Indian ancestry, is substantial evidence to support the juvenile court's finding that there is no reason to know S.S. is an Indian child, and ICWA thus does not apply. (See *In re Charles W.* (2021) 66 Cal.App.5th 483, 490–491 [substantial evidence supported finding ICWA did not apply where a prior finding that ICWA did not apply to siblings was undisputed, and parents denied Indian ancestry, even if Department did not ask extended family members about Indian ancestry].) In light of our conclusion, we need not address the parties' arguments concerning whether any purported inquiry error was prejudicial.

## DISPOSITION

We affirm the juvenile court's order terminating parental rights.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

KIM, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.